1

2

3

4

5

6

7

8
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
9
AT TACOMA

10
CAROL R. JONES,

11
                    Plaintiff,                    CASE NO. 12-cv-05952 JRC

12
            v.                                    ORDER ON PLAINTIFF'S
                                                  COMPLAINT FOLLOWING
13
                                                  ORAL ARGUMENT
CAROLYN W. COLVIN, Acting
14
Commissioner of the Social Security
Administration,
15
                    Defendant.
16

17          This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

18   Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

19   Magistrate Judge and Consent Form, ECF No. 3; Consent to Proceed Before a United

20   States Magistrate Judge, ECF No. 4). This matter has been fully briefed (*see* ECF Nos.

21   12, 15, 16).

22

23

24

1   Plaintiff has the eventually debilitating disease of Spinocerebellar ataxia type 3[1]

2   ("SCA").  This slowly progressive disease now has resulted in her complete disability.

3   The question presented to the Administrative Law Judge is whether or not she was

4   disabled during her period of eligibility for benefits and whether or not plaintiff's burden

5   to prove disability changed at all as a result of the Administration's declaration that this

6   particular disease is eligible for special expedited handling as a "Compassionate

7   Allowance."  This Court finds that although the ALJ correctly concluded that plaintiff

8   continues to have the burden of proving disability during the period of eligibility, he did

9   not provide clear and convincing reasons to discount plaintiff's credibility regarding the

10   degree of her disability during her period of eligibility, requiring a remand for further

11   proceedings.

12

13

14                                    BACKGROUND

15   Plaintiff, CAROL R. JONES, was born in 1968 and was 36 years old on the

16   alleged date of disability onset of December 31, 2004 (*see* Tr. 158-64). Plaintiff has a

17

18   _____

19   [1] Per the Administration's description, Spinocerebellar ataxia ("SCA") "refers to a group of genetic disorders characterized by slowly progressive difficulties with gait, hand movements, speech and abnormal eye movement." POMS Section: DI 23022.500, available at

20   http://policy.ssa.gov/poms.nsf/lnx/0423022500, last visited December 5, 2013. "When this type of brain damage occurs, the cells in the part of the brain that controls movement degenerate (atrophy) resulting in ataxia." *Id.* Plaintiff has SCA "type 3" ("SCA3"). As described in the Administration's internal

21   Operations Manual:

22          The rate of progression for SCA varies with the gene mutation identified and, in general, is faster with earlier onset  . . . .  in those with this particular genetic finding. In SCA1, 2, 3, time to becoming wheelchair dependent is 13-15 years and

23          time to death is 20-30 years. The prognosis for SCA6 and SCA11 is less severe  . . . . and persons with SCA8 and SCA11 have a normal life span.

24   Id.

high school education (Tr. 49). Plaintiff worked soldering electronic parts but stopped work in January of 2005 when she became pregnant and they relocated to another state (Tr. 41-42).  She tried to go back to work, but it only lasted a few days because allegedly as a result of her illness, Spinocerebellar ataxia type 3 ("SCA"), she was unable to stand for hours on her feet (Tr. 42).

Through the date last insured, December 31, 2009, plaintiff had at least the severe impairment of Spinocerebellar ataxia type 3 (20 CFR 404.1520(c)) (Tr. 22). The major issue between the parties is the degree of progression of this admittedly debilitating disease during her period of eligibility and whether or not she qualified for compassionate allowance, as that is defined by the Administration.

PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) of the Social Security Act (*see* Tr. 158-164). Her application was denied initially and following reconsideration (Tr. 89-91, 100-104). Plaintiff's requested hearing was held before Administrative Law Judge Robert Kingsley ("the ALJ") on November 29, 2011 (Tr. 34-68). On February 9, 2012, the ALJ issued a written decision in which he concluded that plaintiff was not disabled during her period of eligibility (Tr. 20-28).

On October 5, 2012, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-6). *See* 20 C.F.R. § 404.981.

1   Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's

2   written decision in November of 2012 (*see* ECF No. 1).  Defendant filed the sealed

3   administrative record regarding this matter ("Tr.") on November 16, 2012 (*see* ECF Nos.

4   9, 10).

5   In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) whether or

6   not plaintiff's impairment meets or equals the severity criteria of Listing 11.17, and

7   should have been assessed as a "Compassionate Allowance"; (2) whether or not the ALJ

8   provided legitimate reasons for rejecting the lay testimony of plaintiff's husband; (3)

9   whether or not the ALJ's RFC assessment was incomplete, as he failed to include a

10   limitation identified by the state agency doctor, whose opinion he gave "significant

11   weight"; (4) whether or not the ALJ's adverse credibility analysis was legally adequate;

12   and (5) whether or not this case should be remanded for payment of benefits, rather than

13   further administrative proceedings (ECF No. 12, p. 2).

14   

15   STANDARD OF REVIEW

16   Plaintiff bears the burden of proving disability within the meaning of the Social

17   Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on

18   the fifth and final step of the sequential disability evaluation process. *See Bowen v.*

19   *Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to

20   engage in any substantial gainful activity" due to a physical or mental impairment "which

21   can be expected to result in death or which has lasted, or can be expected to last for a

22   continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A),

23   1382c(a)(3)(A).  A claimant is disabled pursuant to the Act only if claimant's

24

1  impairment(s) are of such severity that claimant is unable to do previous work, and

2  cannot, considering the claimant's age, education, and work experience, engage in any

3  other substantial gainful activity existing in the national economy. 42 U.S.C. §§

4  423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.

5  1999).

6          Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

7  denial of social security benefits if the ALJ's findings are based on legal error or not

8  supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

9  1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

10  1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

11  such "'relevant evidence as a reasonable mind might accept as adequate to support a

12  conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v.

13  Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)). Regarding the question of whether or not

14  substantial evidence supports the findings by the ALJ, the Court should "review the

15  administrative record as a whole, weighing both the evidence that supports and that

16  which detracts from the ALJ's conclusion.'" *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th

17  Cir. 1995) (*citing Magallanes, supra*, 881 F.2d at 750).

18          In addition, the Court must independently determine whether or not "'the

19  Commissioner's decision is (1) free of legal error and (2) is supported by substantial

20  evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v.

21  Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002) (collecting cases));

22  *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (*citing Stone v. Heckler*, 761 F.2d

530, 532 (9th Cir. 1985)). According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we may not uphold an agency's decision on a ground not actually relied on by the agency") (*citing Chenery Corp, supra*, 332 U.S. at 196). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra*, 674 F.3d at 1117-1122; *see also* 28 U.S.C. § 2111; *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009).DISCUSSION

**(1) Whether or not plaintiff's impairment should have been assessed as a "Compassionate Allowance" and whether or not it meets or equals the severity criteria of Listing 11.17.**

Plaintiff cites the Social Security website and argues that "the medical evidence must be interpreted in a manner that furthers SSA's 'obligation to provide benefits quickly'" (*see* Reply Brief, ECF No. 16, p. 3; *see also id.*, p. 2).  However, although the cited website indicates that claimants "whose medical conditions are so serious that their conditions obviously meet disability standards" should be provided benefits by the Social Security Administration "quickly," nothing on the Social Security Administration's website indicates that the standards by which the medical evidence is interpreted has been

1    altered such that a claimant is more likely to be found disabled. *See*

2    http://www.ssa.gov/compassionateallowances/, last visited December 5, 2013.

3       At oral argument, plaintiff directed the Court's attention to 20 C.F.R. § 404. 1602,

4    which includes the following:

5

6       Compassionate allowance means a determination or decision we make
under a process that identifies for expedited handling claims that involve
impairments that invariably qualify under the Listing of Impairments in
appendix 1 to subpart P based on minimal, but sufficient, objective
medical evidence.

7

8

9    20 C.F.R. § 404. 1602.

10       Although there is an emphasis on quickly determining claims for those "most

11    obviously disabled," and although these individuals "invariably qualify," such individuals

12    still must be found to qualify pursuant to the Listings "based on minimal, but sufficient,

13    objective medical information." *See id.* Therefore, although the objective medical

14    information that is required may be minimal, it nevertheless is still required, still must be

15    sufficient, and nothing appears to have altered plaintiff's burden to present such objective

16    medical evidence of disability. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (it is the

17    claimant's burden to "'furnish [] such medical and other evidence of the existence [of a

18    disability] as the Secretary may require'") (*quoting* 42 U.S.C. § 423(d)(5)(A)) (*citing*

19    *Mathews v. Eldridge*, 424 U.S. 319, 336 (1976)) (footnote omitted).

20

21       Therefore, the Court is not persuaded by plaintiff's argument that the

22    compassionate allowances initiative shifts plaintiff's burden to support a finding of

23    disability. This finding is buttressed by a careful review of plaintiff's citation to the

24    Administration's internal operations manual (*see* Opening Brief, ECF No. 12, p. 9 (*citing*

ORDER ON PLAINTIFF'S COMPLAINT
FOLLOWING ORAL ARGUMENT - 7

POMS [Program Operations Manual System or "POMS"] Section: DI 23022.500),

attached to plaintiff's Opening Brief as Ex. B, *i.e.*, Attachment 2), available at

http:/policy.ssa.gov/poms.nsf/lnx/0423022500, last visited December 5, 2013. The

description in POMS of plaintiff's impairment, "Spinocerebellar Ataxia (SCA), refers to

a group of genetic disorders characterized by *slowly progressive* difficulties with gait,

hand movements, speech and abnormal eye movement." POMS DI 23000.500, plaintiff's

Opening Brief, Attachment 2, "Exhibit B," p 1 (emphasis added), available at

http:/policy.ssa.gov/poms.nsf/lnx/0423022500, last visited December 5, 2013.

Therefore, the disorder of SCA, as per the internal manual cited as support by plaintiff, is

not necessarily disabling at the instant that one is diagnosed with it or develops initial

symptoms.

     The Court also notes that in the POMS cited by plaintiff, in the description

specific to SCA, in the section entitled: "suggested programmatic assessment," the

following medical evidence of record evaluation is suggested: "Molecular genetic testing

is diagnostic for the hereditary SCA's but *to evaluate the severity, a clinical neurological*

*examination will be needed.*" *Id.* (emphasis added).

     The fact that plaintiff's impairment is on the list of Compassionate Allowances

does not, in of itself, demonstrate that plaintiff's SCA met or medically equaled a Listed

Impairment. As the footnote in the cited manual indicates, Administrative Law Judges

may choose to use the MER or may choose to analyze a claimant's impairment using the

suggested Listings when evaluating the claim, "[h]owever, the decision to allow or deny

the claim rests with the adjudicator." POMS Section: DI 23022.500, available at

http:/policy.ssa.gov/poms.nsf/lnx/0423022500, last visited December 5, 2013.

It appears to the Court that the compassionate allowances initiative has an effect

mainly on the speed with which a claimant's application for Social Security benefits is

processed before it reaches an Administrative Law Judge, because of the emphasis on

processing such claims quickly and on claims that "invariably qualify." Claims that

"invariably qualify" would seem to be likely to qualify at the initial stage of

determination, or following reconsideration. This interpretation is buttressed by an

additional federal regulation cited by plaintiff at oral argument.

According to 20 C.F.R. § 404.1615(c), disability determinations will be made by:

a "state agency disability examiner alone if the claim is adjudicated under the quick

disability determination process or the compassionate allowance process (*see* §

404.1602), and the initial or reconsidered determination is fully favorable to you." 20

C.F.R. § 404.1615(c)(3) (other internal citation omitted).

But once the matter is referred to an ALJ for a hearing and further evaluation, the

same rules for a disability finding apply, and the ALJ's duty is the same.  Similarly, this

Court's review process is the same.

The Court is not alone in relying on such an interpretation of the compassionate

allowances initiative, or the POMS. *See, e.g., McCormick v. Colvin*, 2013 WL5350620 at

*15 (S.D.W.Va. September 23, 2013) (unpublished opinion) (Docket No. 6:12cv1454)

(recommending affirming the ALJ's denial of a Social Security claim despite existence of

an impairment "among those identified by the Social Security Administration as a mental

1  condition that qualifies as a 'compassionate allowance'"); *Hall v. Colvin*, 2013 WL

2  4776463 at *4 (D. Idaho September 4, 2013) (unpublished opinion) (Docket No.

3  1:12cv347REB) ("The fact that a condition is list[ed] as a compassionate allowance does

4  not dictate a finding of disability, rather it expedites process for evaluation").

5      Recently, U.S. District Judge Reed O'Connor from the Northern District of Texas

6  provided a detailed discussion of this issue as follows:

7
> The Social Security Administration (SSA) has implemented an expedited
8  > process to evaluate "critical cases." (internal citation to the Hearing
> Appeals and Litigation Law Manual (HALLEX) § I-2-1-40.There are five
9  > categories of critical cases, including a compassionate allowance (CAL)
> case. On February 26, 2010, the SSA added MSUD to the list of medical
10 > conditions that qualify as a CAL case. (internal citation to Program
> Operations Manual System (POMS) DI 23022.445). CAL cases may be
11 > "identified at the initial level through an automated process" or at later
> stages of review, "including at the Court level." (internal citation to
12 > HALEX § I-2-1-40(E)). The purpose of this expedited process is to "allow
> the [SSA] to target quickly the *most obviously disabled individual* for
13 > allowances based on *objective medical information* that [the SSA] can
> obtain quickly." (adding emphasis). Notably, identifying a case as a CAL
14 > case does not mean the claimant is *per se* disabled. (internal citation to
> POMS DI 23022.445 ("Adjudicators may, at their discretion, use the
15 > Medical Evidence of Record or the Listings suggested to evaluate the claim
> .  .  .  .   the decision to allow or deny the claim *rests with the adjudicator*")
16 > (adding emphasis).

17
18  *Webb ex rel. Z.D. v. Colvin*, 2013 WL 5020495 at *20 (N.D. Tex. September 13, 2013)

19  (unpublished opinion) (Docket No. 3:12cv1059-O) (emphases added in *Webb ex rel.*

20  *Z.D.*) (internal footnotes omitted).

21      Therefore, the Court will turn to whether or not the ALJ here properly found at

22  step three of the sequential disability evaluation process that plaintiff's impairments did

23  not meet or medically equal a Listed Impairment.

24

ORDER ON PLAINTIFF'S COMPLAINT
FOLLOWING ORAL ARGUMENT - 10

1    At step-three of the administrative process, if the administration finds that the

2    claimant has an impairment(s) that has lasted or can be expected to last for not less than

3    twelve months and is included in Appendix 1 of the Listings of Impairments, or is equal

4    to a Listed impairment, the claimant will be considered disabled without considering age,

5    education and work experience.  20 C.F.R. § 404.1520(d).   As noted above,  claimant

6    continues to bear the burden of proof regarding whether or not she "has an impairment

7    that meets or equals the criteria of an impairment listed" in 20 C.F.R. pt. 404, subpt. P,

8    app. 1 ("the Listings").  *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005), *as*

9

10   *modified to render a published opinion by* 2005 U.S. App. LEXIS 3756 (9th Cir. 2005).

11       "An ALJ is not required to discuss the combined effects of a claimant's

12   impairments or compare them to any listing in an equivalency determination, unless the

13   claimant presents evidence in an effort to establish equivalence."  *Id.* (*citing Lewis v.*

14   *Apfel*, 236 F.3d 503, 514 (9th Cir. 2001); *Marcia v. Sullivan,* 900 F.2d 172 (9th Cir.

15   1990)).

16       Here, plaintiff contends that Listing 11.17 is met.  In this context[2], Listing 11.17

17   requires "[s]ignificant and persistent disorganization of motor function in two

18   extremities, resulting in sustained disturbance of gross and dexterous movements, or gait

19

20       [2] Listing 11.17: Degenerative disease not listed elsewhere, such as Huntington's chorea,
     Friedreich's ataxia, and spino-cerebellar degeneration, with:

21       A. Disorganization of motor function as described in 11.04B [alleged here]; or
         B. Chronic brain syndrome. Evaluate under 12.02.

22   20 C.F.R. pt. 404, subpt. P, app. 1, 11.17.

23       11.04B involves "Significant and persistent disorganization of motor function in two extremities,
     resulting in sustained disturbance of gross and dexterous movements, or gait and station (internal citation

24   to 11.00C)." 20 C.F.R. pt. 404, subpt. P, app. 1, 11.04B.

ORDER ON PLAINTIFF'S COMPLAINT
FOLLOWING ORAL ARGUMENT - 11

and station." 20 C.F.R. pt. 404, subpt. P, app. 1, 11.04B, 11.17. The ALJ determined that claimant did not meet this Listing during her period of eligibility (Tr. 23).

The medical evidence cited by the ALJ is inconclusive. Plaintiff was referred to her neurologist by osteopathic physician, Daniel M. Katz, D.O. Dr. Katz noted that plaintiff had a sharp sensation in her left leg, causing occasional numbness and causing her to fall or stumble (Tr. 343). This did not meet the listing because it was one extremity -- not two, as required by the Listing. Dr. Katz referred plaintiff to a neurologist, Dr. James R. McDowell, M.D. Although Dr. Katz continued to see her, and continued to reference problems with plaintiff's left leg, she was given a referral back to Dr. McDowell for her neurologic symptoms (*see, e.g.,* Tr. , 335, 337, 338). Dr. Katz's records do not compel a finding that plaintiff met the requirements of Listing 11.17.

Dr. McDowell evaluated plaintiff on July 18, 2007 (Tr. 379-80). He verified pains and numbness in the left AT region. He noted, based on a history provided by plaintiff that "She cannot do the sobriety test. She cannot walk down stairs comfortably, without holding on carefully. This implies ongoing lower extremity difficulties" (Tr. 379). The examination, however, revealed minimal problems in walking and minimal problems with her upper extremities. "She does do tandem walking about as well as the examiner, but not entirely normally. No asymmetries. Normal gait. She does have just minimal trace dysmetria with finger to nose and upper extremities but she performed rapid alternating movements pretty well, no drift or tone asymmetry" (Tr. 380). Dr. McDowell assessed that her "Rhomberg's sign is faintly but definitely positive" (Tr. 379). He concludes "neurologic examination is not very remarkable" and that she was "no more

than minimally affected" at that time, but postulates that her symptoms will increase over

time (Tr. 380).  Therefore, on initial examination in 2007, Dr. McDowell's neurological

exam did not support Listing-level severity, or even the presence of a severe impairment

(*see id.*).  He saw her again in October of 2007 and again concluded that "her impairment

now is mild."  He did not think any "modification of her lifestyle . . . . is necessary" (Tr.

369).

Approximately a year later, in April of 2009, Dr. McDowell saw her again.

Again, she reported that her gait is gradually becoming impaired and her balance is

problematic but his neurological exam, again, did not indicate that she met the Listing

(Tr. 368).  Although he noted that plaintiff's "Romberg's is definitely positive,"

demonstrating a worsening of her condition, and her ankle jerks were absent, her other

reflexes were normal and there was no major dissymmetry (*id.*). He did not rate her

specific level of functionality at that time, or rate the degree of her impairment, although

he opined that "her condition is slightly progressing" (*id.*).  He gave her a handicapped

parking sticker, but it is unclear why he gave her that sticker.

Her period of eligibility expired on December 31, 2009.  Subsequently, Dr.

McDowell saw her again on January 5, 2010 – just five days after her period of eligibility

had expired.  This would provide a fairly good indication of her degree of impairment,

had it been evaluated specifically.  But it wasn't.  He noted "she now takes her stairs one

at a time rather than two at a time" and that her ataxia had "slightly progressed" but there

was no further functional analysis, and certainly no specific functional analysis regarding

ORDER ON PLAINTIFF'S COMPLAINT
FOLLOWING ORAL ARGUMENT - 13

1    the elements set forth in Listing 11.17 (Tr. 367).  Dr. McDowell simply concluded that

2    she was not in need of a cane "just yet."  Whatever that means.

3           In summary, since plaintiff has the burden of proving that she met a Listing

4    pursuant to 11.17 and this particular Listing requires a clinical neurological examination

5    that supports the Listing, the ALJ was not in error by finding that plaintiff failed to meet

6    the Listing.  20 C.F.R. pt. 404, subpt. P, app. 1, 11.17, 11.04B; POMS DI 23000.500,

7    available at http:/policy.ssa.gov/poms.nsf/lnx/0423022500, last visited December 5,

8    2013.

9           **(2) Whether or not the ALJ properly assessed plaintiff's credibility.**

10          Although the medical evidence did not support a Listing, plaintiff's testimony

11   clearly stated that during the period of eligibility, she was not able to perform her past

12   work or engage in ongoing employment (*see, e.g.*, Tr. 24).  She testified that during her

13   period of eligibility, she fell due to leg pain and that she had difficulty going up and down

14   stairs, and difficulty lifting, squatting, bending, standing, reaching, walking, talking,

15   climbing stairs and using her hands (*id.*).  Among other things, she also had difficulty

16   gripping objects, frequent urination, fatigue and sleepiness (*id.*).  Although the ALJ found

17   that claimant's medically determinable impairment could reasonably be expected to cause

18   some of these alleged symptoms, he concluded that plaintiff's testimony concerning the

19   intensity, persistence and limiting effects of these symptoms was not credible.  He based

20   this adverse credibility finding on an evaluation of the medical evidence (*see* Tr. 24-25)

21   and on claimant's own statements (Tr. 27).

If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*citing Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)). An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (*citing* 42 U.S.C. § 423(d)(5)(A) (other citations and footnote omitted)). Even if a claimant "has an ailment reasonably expected to produce *some* pain; many medical conditions produce pain not severe enough to preclude gainful employment." *Fair, supra*, 885 F.2d at 603. The ALJ may "draw inferences logically flowing from the evidence." *Sample, supra*, 694 F.2d at 642 (*citing Beane v. Richardson*, 457 F.2d 758 (9th Cir. 1972); *Wade v. Harris*, 509 F. Supp. 19, 20 (N.D. Cal. 1980)). However, an ALJ may not speculate. *See* SSR 86-8, 1986 SSR LEXIS 15 at *22.

Nevertheless, the ALJ's credibility determinations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (*quoting Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)); *Reddick, supra*, 157 F.3d at 722 (citations omitted); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citation omitted). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in

testimony regarding symptoms, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen, supra*, 80 F.3d at 1284 (citations omitted).

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen*, *supra*, 80 F.3d at 1281-82 (*citing Cotton v. Bowen*, 799 F.2d 1407-08 (9th Cir. 1986)).  First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen, supra*, 80 F.3d at 1281-82.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms based solely on a lack of objective medical evidence to corroborate fully the alleged severity of pain. *Bunnell v. Sullivan*, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*) (*citing Cotton, supra*, 799 F.2d at 1407).  Absent affirmative evidence that the claimant is malingering, the ALJ must provide specific "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen, supra*, 80 F.3d at 1283-84 (*citing Dodrill, supra*, 12 F.3d at 917); *Reddick, supra*, 157 F.3d at 722 (*citing Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996; *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).

As noted above, the medical evidence is inconclusive.  Although her neurologist continued to find a slow progression of her disease, he did not record much regarding her ability to function.  There is a difference between an "inconsistency" and "a lack of support" in the medical records.  Here, the problem is with the latter.  Similar to the Ninth

1   Circuit Court's ruling in *Smolen supra,* at 1284-85, where the court rejected the ALJ's

2   credibility finding, the court noted:

3       [A]lthough [plaintiff's] sparse medical records during the relevant period do not
    contain prior consistent statements to corroborate [her] claims . . . , nothing in

4       them appears to contradict [her] statements, and the ALJ made no finding
    identifying a contradiction.

5   *Id.*

6       Similarly, here, as noted above, although the medical evidence does not fully

7   support plaintiff's testimony, it is not necessarily inconsistent with her testimony and the

8   ALJ made no specific finding identifying any inconsistencies.  Therefore, in this case, the

9   medical record alone is not a sufficient basis for rejecting plaintiff's subjective testimony.

10  *See Carmichael v. Commissioner*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Smolen supra,* at

11  1284-85; *see also Bunnell, supra*, 947 F.2d at 343, 346-47 (9th Cir. 1991) (*en banc*)

12  (*citing Cotton, supra*, 799 F.2d at 1407).

13

14      The ALJ gave two other reasons for finding plaintiff not credible.  First, the ALJ

15  noted that plaintiff "originally stopped work in 2005 due to her pregnancy and the fact

16  that she was relocating to a different state, not because she was disabled" (Tr. 26).

17  Although the fact that plaintiff may have stopped work for reasons other than her

18  impairments may in some circumstances be a sufficient basis to disregard her testimony,

19  *see Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001), in this case, because of the

20  progressive nature of plaintiff's illness, and in light of the medical evidence already

21  presented, it is entirely likely that she stopped work in 2005 for a reason unrelated to her

22  disability and then became disabled, as alleged, because of the progressive nature of her

23  illness.

24

On the other hand, while her testimony at the hearing may not be inconsistent with the progression of her illness, as pointed out by defendant, it is inconsistent with her application, in which she stated that she was unable to work because of her disabling condition beginning on December 31, 2004 (Tr. 158).  Therefore, while this may be a specific, clear and convincing reason for concluding that plaintiff did not accurately assess when her progressive limitations met the definition of disability, it is not a clear and convincing reason for rejecting her testimony that at some time during some period of eligibility, she became disabled.  In this case, it is difficult, at best, to determine the exact moment when plaintiff became disabled because of her diagnosed disease.  And it is clear that at some point she did become disabled.  Even defendant concedes this point.  Therefore, the mere fact that plaintiff concluded that she became disabled earlier than when the Administration concluded it occurred hardly can be considered a clear and convincing reason for concluding that she was not credible.

The Court notes that there was lengthy discussion on this topic at oral argument.  Plaintiff's counsel presented an additional argument that it is very typical for a social security applicant to answer the particular question referenced with the assistance from the local Social Security district office worker. That is, when an applicant is asked about when she became disabled and unable to work, according to plaintiff's counsel, an applicant often will respond with a vague idea that her functional impairments increased over time, and that she does not know exactly on which particular date she became impaired. On this point, in this case, such a circumstance would be no surprise, given the nature of the slowly progressive disease.   It is important to note that it is not this Court's

job to determine a claimant's disability onset date: it is the responsibility of the ALJ. But, the Court notes that it likewise is not clear in this case that claimant should be held to that exact date either as a reason to discount her testimony.

Although this Court, like defendant, (as indicated at oral argument), cannot attest to what happens in the local offices when individuals file their Social Security applications, nor what occurred during this particular application process, the Court does note that it is very common for the date on a disability application regarding the disability onset date to be the exact same date as the date last worked (or the day after). And, it furthermore is not uncommon for the onset date to be amended at a claimant's administrative hearing before the ALJ.

Finally, although defendant directed the Court to plaintiff's application (Tr. 158) for purposes of supporting the ALJ's conclusion, the ALJ did not reference this application for purposes of drawing this adverse credibility finding.

For all of the stated reasons, and because of the slowly progressive nature of plaintiff's eventually disabling disease, the Court does not find in this case that plaintiff's social security disability application is a clear and convincing reason for the ALJ's failure to credit fully all of plaintiff's allegations regarding her functional limitations.

The only other reason noted by the ALJ was that plaintiff's statements regarding her disability were inconsistent with her activities of daily living (Tr. 20). Among other things, the ALJ noted that she took care of her 6 year old child since birth, continues to drive, is able to prepare meals, can do laundry, cleaning and vacuuming, feeds and takes care of her dog and has no difficulty caring for her hair, shaving, feeding herself or using

the toilet (Tr. 26).  The ALJ also noted that she goes outside every day, regularly goes

shopping, and does not have a problem sleeping (*id.*). The ALJ did not note, however,

any specific testimony by plaintiff that contradicts these abilities and did not specify how

these activities are transferable into a work setting[3]. Furthermore, these activities of daily

living are not inconsistent necessarily with a finding of disability in this context.

Regarding activities of daily living, the Ninth Circuit repeatedly has "asserted that

the mere fact that a plaintiff has carried on certain daily activities  .  .  .  .  does not in any

way detract from her credibility as to her overall disability." *Orn v. Astrue*, 495 F.3d 625,

639 (9th Cir. 2007) (*quoting Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)).

The Ninth Circuit specified "the two grounds for using daily activities to form the basis

of an adverse credibility determination: (1) whether or not they contradict the claimant's

other testimony and (2) whether or not the activities of daily living meet "the threshold

for transferable work skills." *Orn, supra*, 495 F.3d at 639 (*citing Fair, supra*, 885 F.2d at

603). As stated by the Ninth Circuit, the ALJ "must make 'specific findings relating to

the daily activities' and their transferability to conclude that a claimant's daily activities

warrant an adverse credibility determination. *Orn, supra*, 495 F.3d at 639 (*quoting Burch

v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)).

Here, although the ALJ noted particular activities that plaintiff could perform, he

did not describe (1) whether or not they contradict plaintiff's other testimony and did not

---

[3] Although defendant provided an additional argument on this topic at oral argument, this Court
will not affirm an ALJ's denial of benefits on the basis of an *ad hoc* argument not indicated by the ALJ in
the written decision, such as inconsistencies regarding ability to grip. *See Bray*, *supra*, 554 F.3d at 1225-
26 (*citing Chenery Corp.*, *supra*, 332 U.S. at 196).

specify what other testimony was contradicted, nor did he describe (2) whether or not the activities of daily living meet the threshold for transferable work skills as noted in the *Orn* case.  These were not specific findings and, therefore, cannot form the basis of an adverse credibility finding. *See id.* It is for the ALJ, not the Court, to describe how plaintiff's activities of daily living contradict plaintiff's other testimony, if they do so contradict. Here, the ALJ failed to explain fully the rationale for disregarding plaintiff's specific functional allegations.

In summary, the ALJ did not provide clear and convincing reasons to reject plaintiff's testimony.  Although there certainly is substantial evidence to support the finding that she was not incapable of working during the early period of her claimed disability, there is not substantial evidence to support the finding that she did not become more severely impaired as her disease progressed.

This error is not harmless error, because if plaintiff's testimony is credited, her RFC would reflect a greater level of limitation, hence the error is not "'inconsequential to the ultimate nondisability determination.'" *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted).

**(3) Whether or not the ALJ provided legitimate reasons for rejecting the lay testimony of plaintiff's husband and not including limitations by Dr. Stevick.**

The ALJ also rejected the lay evidence, in part, for similar reasons that plaintiff's testimony was rejected. The Court already has determined that this matter must be

1  reversed and remanded for further consideration of plaintiff's credibility, *see supra*,

2  section 2. For this reason, the lay evidence provided by plaintiff's husband should be

3  assessed anew following remand of this matter.

4      Similarly, with respect to plaintiff's additional allegation of error regarding the

5  ALJ's evaluation of Dr. Stevick's testimony, this opinion will need to be reexamined in

6  light of the other findings already discussed by the Court, as plaintiff's residual functional

7  capacity ("RFC") must be determined anew.

8      (4) **Whether this matter should be reversed and remanded for benefits
9  or for further administrative proceedings**.

10      Finally, plaintiff has requested remanding this matter for payment of benefits

11  rather than additional administrative proceedings.  Plaintiff's counsel notes that

12  plaintiff and her husband are upstanding citizens beset by a terrible misfortunate

13  and they "should not be subjected to further insult by the Commissioner's agents"

14  (ECF No. 12, p. 16).  Unlike the case of *Beneke v. Barnhart*, 379 F.3d 587, 595 (9th

15  Cir. 2004), as noted above, there are a number of open questions regarding how far

16  plaintiff's illness had progressed during the period of eligibility. Among other

17  things, it is unclear whether or not the ALJ's RFC analysis will need to be modified

18  in light of a revised credibility analysis.  Simply put, although having Spinocerebral

19  ataxia may allow for a "compassionate allowance" it is also clear that during the

20  early stages of this disease, a person with this condition may not be disabled

21  necessarily.  The ALJ must sort out this issue and it is not for this Court to do so.

22

23

24

ORDER ON PLAINTIFF'S COMPLAINT
FOLLOWING ORAL ARGUMENT - 22

1    Generally, when the Social Security Administration does not determine a

2    claimant's application properly, "'the proper course, except in rare circumstances, is

3    to remand to the agency for additional investigation or explanation.'" *Benecke v.*

4    *Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth

5    Circuit has put forth a "test for determining when [improperly rejected] evidence

6    should be credited and an immediate award of benefits directed." *Harman v. Apfel*,

7    211 F.3d 1172, 1178 (9th Cir. 2000) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292

8    (9th Cir. 1996)). It is appropriate when:

9
          (1) the ALJ has failed to provide legally sufficient reasons for rejecting such
10        evidence, (2) there are no outstanding issues that must be resolved before a
          determination of disability can be made, and (3) it is clear from the record
11        that the ALJ would be required to find the claimant disabled were such
          evidence credited.
12

13   *Harman, supra,* 211 F.3d at 1178 (*quoting Smolen, supra*, 80 F.3d at 1292).

14   Here, outstanding issues must be resolved. *See Smolen, supra*, 80 F.3d at 1292.

15   Furthermore, the decision whether to remand a case for additional evidence or simply to

16   award benefits is within the discretion of the court. *Swenson v. Sullivan*, 876 F.2d 683,

17   689 (9th Cir. 1989) (*citing Varney v. Secretary of HHS*, 859 F.2d 1396, 1399 (9th Cir.

18   1988)).

19   The ALJ is responsible for determining credibility and resolving ambiguities and

20   conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.

21   1998) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)).  If the

22   medical evidence in the record is not conclusive, sole responsibility for resolving

23   conflicting testimony and questions of credibility lies with the ALJ.  *Sample v.*

24

*Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))).

For the above reasons, this matter is REVERSED and REMANDED for further proceedings.

<u>CONCLUSION</u>

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 9th day of December, 2013.

J. Richard Creatura
United States Magistrate Judge